**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

THADDEUS THOMAS, et al.,          :
                                  :   Civil Action No. 12-6379 (SRC)
               Plaintiffs,        :
                                  :
          v.                      :   **OPINION**
                                  :
STEVE JOHNSON, et al.,            :
                                  :
               Defendants.        :

**APPEARANCES:**

> THADDEUS THOMAS, #114, Plaintiff *pro se*
> RONALD BARBER, #104, Plaintiff *pro se*
> RAYMOND ALVES, #058, Plaintiff *pro se*
> RAFIEEK GRAHAM, #083, Plaintiff *pro se*
> JHON SANCHEZ, #587, Plaintiff *pro se*
> East Jersey State Prison, Special Treatment Unit Annex
> 8 Production Way
> Avenel, New Jersey 07505

**CHESLER**, District Judge

Plaintiffs, Thaddeus Thomas, Ronald Barber, Raymond Alves, Rafieek Graham, and Jhon Sanchez, are involuntarily committed persons pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24, et seq., confined at the Special Treatment Unit at the East Jersey State Prison ("EJSP-STU") in Avenel, New Jersey, at the time they submitted this Complaint for filing. Plaintiffs seek to bring this action *in forma pauperis* ("IFP"). Only one IFP application was submitted in this case by Plaintiff

Thomas, although all Plaintiffs signed the application.
However, Thomas' IFP application appears to be incomplete and
insufficient to proceed.

## I.   FACTUAL ALLEGATIONS

Plaintiffs bring this civil action, pursuant to 42 U.S.C. §
1983, against the following defendants, Steve Johnson, Assistant
Superintendent at EJSP-STU; Merril Main, Clinical Director at
EJSP-STU; Shantay Brame Adams, Assistant Clinical Director; Tesa
Kearny, Program Coordinator, N.J. Department of Human Services
("NJDHS"); Tina Spagnola, NJDHS Program Coordinator; Angel
Santiago, Administrator at EJSP-STU Annex; and Major Burns, N.J.
Department of Corrections ("NJDOC").  (Complaint, Caption, ¶¶ 4b
through 4h.)  The following factual allegations are taken from
the Complaint, and are accepted for purposes of this screening
only.  The Court has made no findings as to the veracity of
Plaintiffs' allegations.

Plaintiffs principally allege that the EJSP-STU facility is
infested with bed bugs, and has been for several years.  They
generally assert that it is a violation of their constitutional
rights to be confined in a bug-infested facility.  (Compl., ¶
6.)  Plaintiffs allege that on October 5, 2012, residents were
told to take all of their personal property out of their rooms
to get sprayed for the bed bug infestation.  The infestation has

spread to most all of the rooms in the South Unit at EJSP-STU. Plaintiff Thomas alleges that he has made verbal complaints about the bed bug problem since his arrival at EJSP-STU. He also alleges that he has filed grievances about residents being transferred to a facility that is infested with bed bugs. Plaintiff Thomas generally alleges that the bug problem has been brought to the attention of Defendants Main and Johnson, who "overlook and disregard" the complaints. (Compl., ¶ 6 at pg. 10.)

Plaintiff Thomas further alleges that he and other residents wake up with red marks and rash-like symptoms from bed bug bites. When he goes to the doctor, he is only given a white cream, allegedly as per order of Defendant Johnson. Thomas also alleges that if he or other residents make complaints about the bed bugs, they are threatened with "MAP" status, job loss and lock-up. Thomas states that he brings this problem to the attention of unit officers every time the bed bug exterminators come to the unit and spray. Plaintiff contends that it has caused even more cells/rooms to have bed bugs. (Compl., ¶ 6.)

On October 5, 2012, a South side laundry worker complained to unit officers that bed begs were falling from a resident's laundry bag, but the complaint was ignored and the unit laundry was washed with the infested laundry. That same day, the

exterminator allegedly told Plaintiff Thomas that the bed bugs were inside the walls.  Defendants Johnson and main have been made aware of the problem but "refuse to hire the right professionals to contain this outbreak."  (Compl., ¶ 6 at pg. 15.)  Also on October 5, 2012, the South Unit officers allowed residents with bed bugs to take a shower without sanitizing them or cleaning the showers afterwards.  (Compl., ¶ 6 at pg. 17.)

On October 24, 2012, this Court received an "addendum" to the Complaint filed by Plaintiff Thomas.  (Docket entry no. 2.) Thomas alleges that, on October 6, 2012, a resident in Room #212 was ordered out of the room onto the tier when bed bugs were found.  Thomas verbally complained about the problem and he allegedly was told that the resident should be placed in isolation, but it never happened.  Thomas also has complained that brooms, unit mops, mop heads and slop sink are being used to clean where bed bugs are found but are not cleaned or thrown away afterwards.  These same cleaning instruments are then used to clean the day room and mess serving line.  (Docket entry no. 2.)  When complaints are made, Plaintiff is threatened with "MAP" status, job loss or lock-up.  (Id.)

Plaintiff further alleges that, on October 5, 2012, the exterminator told him that the bed bug problem is beyond

4

terminating and that all he can do is spray.  (*Id.*)  On October

15, 2012, Defendant Johnson came to the South Unit and was told

about the bed bug problem.  Plaintiff alleges that Johnson

"disregarded" the complaints and allegedly responded that "it's

not within the budget to hire another bed bug exterminator guy

to contain the rapid spread of the bed bugs throughout the

facilities" at EJSP.  (*Id.*)  On October 16, 2012, Plaintiff

Thomas alleges that he and another resident spoke with Defendant

Johnson about the exterminator when Johnson was in the yard.

Thomas asked when the exterminator would be coming again and

Johnson allegedly said that he stopped the exterminator from

coming to the facility because it was not in the resident

welfare fund.  Johnson also allegedly told Plaintiff Thomas to

wash the clothes of the residents with bed bugs, to which

Plaintiff responded that washing their clothes would spread the

bed bugs even more if contaminated clothes were washed with

others.  Plaintiff alleges that Johnson just shrugged his

shoulders and walked away.  (*Id.*)  Plaintiff later says that the

exterminator may come once a year.  (*Id.*)

On October 17, 2012, the exterminator came again and

sprayed the outside doors of the cells on the first floor of the

unit.  The exterminator provided Plaintiff with his first name

only and told Plaintiff that bed bugs rapidly spread  throughout

the building.  The exterminator then went to cells #211 and #212, where the bed bug nests were initially, and sprayed again. He also sprayed the outside of the doors to cells on the second floor of the South unit, the third floor, and the serving line in the unit mess hall where food is placed and served.  (*Id.*)

Plaintiffs ask to be transferred to another facility that is sanitized, to have a court-appointed exterminator assigned to oversee the bed bug infestation at EJSP-STU, and to be compensated for their bites, pain and suffering.  (Compl., ¶ 7.)

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to *sua sponte* screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B), because the Plaintiffs are seeking to proceed *in forma pauperis*.

6

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P.* 8(a)(2). Citing its opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)(citing *Iqbal*, 556 U.S. at 676). The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must

7

demonstrate that the allegations of his complaint are plausible.
*See id*. at 678-79; *see also Twombly*, 505 U.S. at 555, & n. 3;
*Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).
"A complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to 'show' such an
entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing
*Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir.
2008).  *See also Argueta v. U.S. Immigration & Customs
Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011); *Bistrian v. Levi*,
2012 WL 4335958, *8 (3d Cir. Sept. 24, 2012)(allegations that
are no more than conclusions are not entitled to the assumption
of truth; a court should "look for well-pled factual
allegations, assume their veracity, and then 'determine whether
they plausibly give rise to an entitlement to relief.'")
(quoting, *Iqbal*, 556 U.S. at 679).

### III.   SECTION 1983 ACTIONS

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). *See also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## IV.   DISCUSSION

In this case, five Plaintiffs seek to join in this one action concerning the bed bug infestation at the EJSP-STU. *Fed.R.Civ.P.* 18(a) controls the joinder of claims. In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20 of the Federal Rules of Civil Procedure provides the following regarding permissive joinder of parties:

    (1)  Plaintiff. Persons may join in one action as plaintiffs if:
        (A)  they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
        (B)  any question of law or fact common to all plaintiffs will arise in the action.

(2)  Defendants.   Persons ... may be joined in one action
     as defendants if:
     (A)  any right to relief is asserted against them
          jointly, severally, or in the alternative with
          respect to or arising out of the same
          transaction, occurrence, or series of
          transactions or occurrences; and
     (B)  any question of law or fact common to all
          defendants will arise in the action.

*Fed.R.Civ.P.* 20(a).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.  *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. *See, e.g., Pruden v. SCI Camp Hill*, 252 Fed. Appx. 436 (3d Cir. 2007); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir. 1997).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

Despite the broad language of rule 18(a), a plaintiff may
join multiple defendants in a single action only if
plaintiff asserts at least one claim to relief against each
of them that arises out of the same transaction or
occurrence and presents questions of law or fact common to
all.  If the requirements for joinder of parties have been
satisfied, however, Rule 18 may be invoked independently to
permit plaintiff to join as many other claims as plaintiff
has against the multiple defendants or any combination of
them, even though the additional claims do not involve
common questions of law or fact and arise from unrelated
transactions.

7 Charles Alan Wright, Arthur R. Miller, and May Kay Kane, *Federal Practice and Procedure*, § 1655 (3d ed. 2009).

In *Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009), the Court of Appeals for the Third Circuit held that *in forma pauperis* prisoners are not categorically barred from joining as plaintiffs under *Fed.R.Civ.P.* 20, and further addressed certain considerations applicable to civil cases in which multiple prisoner plaintiffs seek to join in one action pursuant to Rule 20.

"In exercising its discretion [whether to permit joinder], the District Court must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan*, 570 F.3d at 157.

First, this Court notes that the Complaint alleges a general conditions claim concerning the bed bug infestation, which may be applicable to all Plaintiffs to proceed in one action. However, there are general allegations of injury, lack of medical treatment, and retaliation that are more appropriately individual claims that have not been pled with factual allegations specific to the individual Plaintiffs. Thus, it is not clear which, if any, of the Plaintiffs are asserting these individual claims.

11

Second, here, where the entire $350.00 filing fee has not been prepaid, the full $350.00 filing fee must be assessed against **each** *in forma pauperis* co-plaintiff permitted to join under Rule 20, as though each such plaintiff were proceeding individually. *Hagan*, 570 F.3d at 150. Where multiple co-plaintiffs seek to proceed *in forma pauperis*, each must submit a complete application, pursuant to 28 U.S.C. § 1915.

As an initial matter, the $350.00 filing fee was not prepaid. As noted above, only Plaintiff Thomas submitted an application to proceed *in forma pauperis*, and this application is incomplete because it does not include an institutional account statement certified by an authorized officer of the institution where he is confined, which may be necessary for this Court to determine whether the litigant is indigent.[1] As all Plaintiffs have failed to meet the filing fee requirements, all applications for leave to proceed *in forma pauperis* will be denied without prejudice. If Plaintiffs move to re-open this action, or if any Plaintiff chooses to assert individual claims

---

[1] The Court recognizes that 28 U.S.C. § 1915(a)(2) and (b), applicable to prisoners and pretrial detainees, is not applicable to Plaintiffs herein because they are civilly committed persons under the SVPA. However, the affidavit of indigency provided by Plaintiff Thomas in this instance is insufficient to aid this Court in determining Plaintiff's eligibility to proceed *in forma pauperis*. Consequently, a recent institutional account statement is necessary to ascertain or establish Plaintiff's indigency.

in a new separate action, they may file new and complete applications for leave to proceed *in forma pauperis.* *See* fn. 2, *supra.*

Finally, *Fed.R.Civ.P.* 21 provides that, "on motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." As the Third Circuit in *Hagan* provided new guidelines regarding the procedures applicable to cases in which multiple pro se prisoner plaintiffs seek to proceed jointly, it would not be just, at this time, to sever any improperly joined claims or parties. Instead, Plaintiffs will be given the opportunity to either (1) move to re-open this action, complying with the rules applicable to joinder of claims and parties, including the filing fee requirements, or (2) file new and separate actions asserting their individual claims.[2]

IV.   CONCLUSION

For the reasons set forth above, all pending applications for leave to proceed in forma pauperis will be denied without prejudice and the Clerk of the Court will be ordered to administratively terminate this action, without filing the

_____

[2] While the Plaintiffs allege a common claim concerning bed bug infestation, they do not allege individual claims that they each have suffered bed bug bites, have been refused adequate treatment, have been retaliated against for filing grievances, etc., except in a most general manner as to all Plaintiffs collectively.

Complaint or assessing a filing fee.  Plaintiffs will be granted leave to move to re-open this action, or file their own individual Complaints, within 30 days, together with complete IFP applications for each Plaintiff.[3]  Any future joint amended Complaint or individual Complaint must comply with the rules for asserting multiple claims by or against multiple parties.  An appropriate order follows.


_____
STANLEY R. CHESLER
United States District Judge

_____

[3] Such an administrative termination is not a "dismissal" for purposes of the statute of limitations, and if the case is reopened pursuant to the terms of the accompanying Order, it is not subject to the statute of limitations bar if it was originally filed timely.  *See Houston v. Lack*, 487 U.S. 266 (1988)(prisoner mailbox rule); McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996); *see also Williams-Guice v. Board of Education*, 45 F.3d 161, 163 (7th Cir. 1995).